**Decided March 8, 1983**

COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS
COMMONWEALTH TRIAL COURT

| | | |
|---|---|---|
| IN RE THE ESTATE OF ) | CIVIL ACTION NÓ. 82-72 | |
| ANTONIO ROBERTO CAMACHO, ) | ORDER OF DISTRIBUTION | |
| Deceased. ) | | |

## INTRODUCTION

This matter reached an impasse when the court, on two prior occasions, expressly or implicitly denied the motions made to distribute the assets of the decedent. The core of the problem lies in the absence of any intestate succession laws in the Commonwealth.

This estate presents the issue which has been avoided by one means or another in other cases.[1] The court will

---

[1] Some prior estates had insignificant assets which reduced the matter of distribution to a problem of paying off creditors. In other estates, the heirs were able to come to an agreement for distribution. As will be seen in this estate, no such agreement is possible because the daughter of the decedent is incompetent.

have to determine in what manner assets held by a Chamorro
at his death are to be distributed to his heirs. This
determination, will be made without the guidance of a statute.

### STATUS OF THE ESTATE

Several facts are clear and uncontroverted. The decedent
was a Chamorro who died intestate with substantial assets.
He was survived by a spouse, having been married in 1952.
The decedent was also survived by three children. The
oldest, Reiru Tamanyu, was born prior to the decedent's
marriage and was by another woman. Mr. Tamanyu is a Japanese
citizen. The next oldest is an adult son, Arthur Blanco
Camacho. The youngest child is Clarissa Blanco Camacho who
is legally incompetent. The latter two children are the
issue of the deceased and Rosa Blanco Camacho, decedent's
surviving spouse who also serves as administratrix for the
estate.

As testified by Rosa Blanco Camacho and as gathered
from the inventory on file herein, the assets, value, and
source of assets are as follows:

Assets of Estate of
Antonio Roberto Camacho

| Description | Source of Asset | Est. Value |
|---|---|---|
| Lot 006 H 16 | Property acquired during marriage by joint efforts of decedent and surviving spouse | $ 90,000.00 |

| Description (cont'd) | Source of Asset | Est. Value |
|---|---|---|
| T.D. No. 1365 (Lot 355) | Decedent inherited from his parents | $ 19,000.00 |
| Tract No. 21923 | Property acquired during marriage by joint efforts of decedent and surviving spouse | $ 41,000.00 |
| Tract No. 21924 | " " | $ 41,000.00 |
| T.D. No. 1365 (Lot 355) | Decedent inherited from his parents | $ 39,000.00 |
| Lot 002 H 64 | Property acquired during marriage by joint efforts of decedent and surviving spouse | $ 700.00 |
| Lot 002 H 66 | " " | $ 1,000.00 |
| Lot 003 H 48 | " " | $100,000.00 |
| Lot 143 T 01 | " " | $ 12,400.00 |
| Lot No. 21353 | " " | $150,000.00 |
| 1982 Ford Granada | " " | $ 12,000.00 |
| Household Effects | " " | $ 7,000.00 |
| Savings Acct. 0203-076703 | " | $ 24.48 |
| 730 shares-capital stock | " | $ 730.00 |
| 1 share - preferred stock | " | $ 50.00 |

Thus, the estate property comes from two sources, that inherited by the decedent and that acquired during marriage with the joint efforts of the decedent and the surviving spouse.

### DISCUSSION

Turning first to the real property that the decedent inherited from his parents, there appears to be little doubt

from the testimony adduced at the hearing of this matter, as well as authoritative sources available on Chamorro descent and distribution and prior case law that this is regarded as iyon mañaina or ancestors land. Blas v Blas, 3 TTR 99 (Tr. Div. 1966); Land Tenure Patterns, pp 222-226; Spoehr, Fieldiana; Anthropology, p 133 et seq.

The custom for the distribution of iyon mañaina appears fairly clear. Either the owner makes a partida and distributes the land among his/her children or, if a partida is not accomplished prior to death, the children divide up the property among themselves.

In any event the prevailing custom is that iyon mañaina land is passed down to the owner's children in equal shares, omitting the spouse. This is exactly what was held in Palacios v Coleman (D.C. Mar. Islands) Civil Action 78-49 (1980). As noted in Palacios, the children may have an obligation to support their mother during her lifetime by allowing her to use the land, or a portion thereof, for her lifetime.[2]

---

[2] Pending before the Senate of the Northern Mariana Islands is Senate Bill 3-58, a bill to enact a probate code. Chapter IX, Section 2 of the proposed code would provide that iyon mañaina (ancestor's land) would be distributed to the issue of the deceased with the surviving spouse acquiring a life estate. If there is no surviving spouse, the issue of the decedent acquire the property by right of representation. If there are no issue, then the property would be distributed to the decedent's siblings. Thus, the proposed bill demonstrates a strong intent to keep the land within the decedent's family and exclude the spouse except for her life estate interest.

Therefore, the two assets of the estate which is _iyon manaina_ will be distributed in equal shares to the issue of the deceased.

The balance of the real property of the estate presents a completely different problem.[3]

The property is not ancestors or family land but what might be classified as community property - that property which is acquired during the marriage of the decedent and surviving spouse through their joint efforts and not by inheritance or gift.

The administratrix has presented two witnesses on the custom of descent and distribution of Chamorro community property. Both have indicated that upon the death of one spouse, all the community property passes to the surviving spouse and the latter can do whatever he or she wishes with the property.

---

[3] Requests for legislation dealing with intestate succession were made almost 20 years ago in _Blas v Blas_, supra, so that the courts would have guidance in the matter of descent and distribution. So long as the economy and life in the Northern Mariana Islands was not conducive to the acquisition of significant estates, the problem was not a major one. However, in the middle 1970's, the distribution of large sums of monies under the Micronesian Claims Act of 1971 created the need to order the distribution of awards for damages to land and without statutory assistance, the Trust Territory High Court, by judicial decisions, established a system of distribution of the funds of a deceased. Basically, this was by right of representation to the heirs of the decedent.

However, when both were asked for specific examples of when and where this custom had been practiced, neither could state that he had personal knowledge of such a distribution taking place.

Perhaps, this is understandable considering the history of the Northern Mariana Islands since the Spanish administration. As Spoehr, supra, and Land Tenure Patterns point out, the culture and economy of the Northern Mariana Islands was not designed for a husband and wife to acquire property by purchase or other means. Chamorro society was based on a subsistence economy. Land was passed down generation by generation and was the source of support for the family. There were few, if any, entrepreneurs. This situation had existed until the last couple of decades when private enterprise, a dollar economy, and the expansion of personal gains changed the attitude and fortunes of many Chamorro families. Assets began to be accumulated. Land began to be sold and purchased outside of the immediate family. Commercial establishments and businesses owned by Chamorros (and Carolinians) have become a common occurrence.

The decedent and his wife are part of that emerging class of people previously unknown in Chamorro society but which has now acquired some measure of wealth. With the passage of time resulting in the transition of the Chamorro society from one of a subsistence economy to one of a dollar

economy, there also came the aging process which ultimately results in death, as it did in the case of Antonio Camacho.

A custom is generally defined as a law established by long usage and is such usage as by common consent and uniform practice has become the law of the place, or of the subject matter, to which it relates. LaLou v Aliang, 1 TTR 94 (Tr. Div. 1954).

The court can find no basis to support the finding that the custom is as was testified to by the witnesses presented at the hearing. There is clearly no long usage or practice of distributing community property all to the surviving spouse. Even if one could say that this is a new custom since the concept of community property itself is new, neither witness could state that such a custom has been practiced.

As noted above, this is the third attempt to distribute the estate and the matter must be resolved. The court will, reluctantly, devise a plan for the distribution of the community property in the absence of a statute and in the absence of any recognized custom.

The initial assumption for the accumulation of community property is that both spouses equally exerted their efforts in its acquisition. This is true even if the wife is the homemaker and the husband is the wage earner. The presence

402

of the wife in the home, tending the house, taking care of the children, preparing the food, etc., allows the husband to devote his time to acquiring money to make purchases. Thus, both the husband and wife, in the true sense of a community (family) effort are given equal credit for the assets acquired during the marriage. Consequently, each owns an undivided one-half of the community property and on the death of one of the spouses, the survivor retains his or her one-half.

The question remains as to what is to be done with the decedents half. Since community property is not joint tenancy property with rights of survivorship, it does not automatically pass to the survivor.[4]

The decedent's half of the community property is the result of his efforts and the property should pass to his issue in keeping with the pattern of providing for the decedent's issue as is done with _iyon mañaina_ land. The apparent (if not real) reason for assuring that the children

---

[4] None of the assets of this estate are held in joint tenancy. The assets are in the sole name of Antonio Roberto Camacho or the Heirs of Antonio Roberto Camacho. Although title was in the decedent's name alone, this does not prohibit the court from finding (as it does) that the property is community property and not separate property. 15A AmJur 2d, _Community Property_, §§20 and 21.

receive assets from their parents is to avoid having them become landless. If, for example, there is no _iyon mañaina_ land but substantial community property which would pass all to the surviving spouse, the latter could remarry and devise or give away the community property to her new spouse or to others, leaving the issue with nothing.

It is concluded that the established Chamorrò custom of omitting the spouse from taking _iyon mañaina_ shows an intent to keep the real property in the family, provide for the issue (as well as the life estate for the spouse) and to avoid the possibility of the surviving spouse from dissipating the assets in some manner. By distributing the decedent's one-half of the community real property to his issue, the same results are achieved except that the surviving spouse has her one-half of the community property in fee simple to support herself.

As to the personal property held in the name of the decedent, it is found that assets such as household goods and furnishings and automobile are intended to be kept within the home and for the benefit of the surviving spouse. The Commonwealth has no statutes establishing a family allowance or other allowances but it appears contrary to the theory of maintaining the family home to divide up such personal items between the spouse and issue.

404

The stock certificates and small bank account are another matter and, since they are not held in joint tenancy, should pass the same as community real property. However, in view of the small amounts and that the surviving spouse is requesting no administratrix fees, these items will be distributed to her.

Accordingly, the assets of this estate shall be and are hereby distributed as follows:

To ARTHUR BLANCO CAMACHO, the legally appointed guardian of CLARRISA BLANCO CAMACHO, and REIRU TAMANYU the following described property, in equal one-third shares:

(1) An undivided one-half interest (with Jose Roberto Camacho) in real property described as Lot 355, T.D. No. 1365, East District, consisting of 6,297 square meters more or less as shown on Cadastral Plat No. 2004/79 registered as Document No. 8001 on February 9, 1979;

(2) Real property described as T.D. No. 1365 consisting of 19,563 square meters as shown on Cadastral Plat No. 2004/79 registered as Document No. 8001 on February 9, 1979.

To ARTHUR BLANCO CAMACHO, the legally appointed guardian of CLARRISA BLANCO CAMACHO and REIRU TAMANYU in equal shares an undivided one-half interest in the following described property and to ROSA BLANCO CAMACHO the other undivided one-

half interest in said property:

(1) Lot 006 H.16, Chalan Kanoa, as shown on Cadastral Plat No. 006 H 00 dated February 17, 1971 and containing an area of 1,188 square meters, more or less;

(2) Tract No. 21923, I-Denni; as shown on Cadastral Plat No. 2027/74 registered as Document No. 13288 on November 13, 1982, containing an area of 20,602 square meters, more or less;

(3) Tract No. 21924, I-Denni, as shown on Cadastral Plat No. 2027/74 registered as Document No. 13288 on November 13, 1982, containing an area of 20,622 square meters, more or less;

(4) Lot 002 H 64, Susupe, as shown on Cadastral Plat No. 002 H 01 dated December 17, 1975 containing an area of 142 square meters, more or less;

(5) Lot 002 H 66, Susupe, containing an area of 267.00 square meters, more or less;

(6) Lot 003 H 48, Susupe, as shown on Cadastral Plat No. 003 H 00 dated February 17, 1971 and containing an area of 2,111 square meters, more or less;

(7) Lot 143 T 01, Marpo Valley, Tinian, containing an area of 24,806 square meters, more or less, as shown on Cadastral Plat No. 143 T 00 registered as Document No. 1677 on September 7, 1972;

(8) Lot No. 21353, Laulau, containing an area of 2,994 hectare, more or less as described on Cadastral Plat No. 2008/70 registered as Document No. 14946 on July 16, 1982;

406

To ROSA BLANCO-CAMACHO all right, title, and interest in and to the following:

(1)  1982 Ford Granada automobile;

(2)  730 shares of capital stock of Guam International Trade Center, Inc.;

(3)  1 share of the Series A preferred stock of Mobil Oil Micronesia;

(4)  Bank of Guam Savings Account No. 0203-076703

Dated at Saipan, CM, this <u>8th</u> day of March, 1983.

Robert A. Hefner, Chief Judge